## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| BMW OF NORTH AMERICA, LLC, *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-235 (PTG/WEF) |
| | ) | |
| KATHI VIDAL, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

### MEMORANDUM ORDER

This matter is before the Court on Plaintiffs BMW of North America, LLC and BMW

Manufacturing Co., LLC's (collectively "BMW") Motion for Summary Judgment (Dkt. 42) and

Defendants Director of the Patent and Trademark Office, Kathi Vidal[1], and U.S. Patent and

Trademark Office's (collectively "Defendants") Motion for Summary Judgment (Dkt. 47). The

motions ask the Court to decide whether the Director of the Patent and Trademark Office ("PTO")

acted arbitrarily and capriciously by refusing to apply the *Becton* factors when she decided to

vacate the PTO's decision that it had been presented the same or substantially the same prior art

or arguments in previous proceedings concerning U.S. Patent No. 7,925,416. Dkts. 43, 48. On

July 2, 2024, the Court heard argument on these motions and took the matter under advisement.

Dkt. 58. For the reasons that follow, the Court will grant, in part, and deny, in part, BMW's Motion

(Dkt. 42) and will deny Defendants' Motion (Dkt. 47).

---

[1] Kathi Vidal was the Director of the Patent and Trademark Office at the time this matter was briefed and argued. Now, Coke Morgan Stewart is the Acting Director of the U.S. Patent and Trademark Office. COKE MORGAN STEWART, https://www.uspto.gov/about-us/coke-morgan-stewart (last visited Mar. 18, 2025).

## I.    Background[2]

The instant matter stems from litigation initiated in October 2018 in the United States District Court for the District of Delaware. Dkts. 38-40, Administrative Record ("A.R."), at 15–16. Carrum Technologies, LLC ("Carrum") brought actions against BMW, Ford Motor Company, and FCA US LLC, in which Carrum asserted two patents that it owned: U.S. Patent No. 7,925,416 ("'416 Patent") and U.S. Patent No. 7,512,475 ("'475 Patent"). *Id.*; A.R. 1837. These two patents are related to one another—the '475 Patent is the parent of the '416 Patent—and are directed to systems and methods of reducing the speed of a vehicle in a turn, implemented through an adaptive cruise control system. A.R. 17–18; A.R. 1773; A.R. 2043. As relevant to the parties in the instant action, the "District of Delaware ordered judgment in favor of BMW after the parties stipulated to noninfringement based on the court's claim constructions." Dkt. 43, Plaintiff Statement of Undisputed Facts ("Pl. SOUF") ¶¶ 4–5, at 9–10. As of April 17, 2024, at the time BMW filed their instant Motion for Summary Judgment, an appeal was pending in the Federal Circuit from the judgment of the District of Delaware. *Id.*

In April 2019, Plaintiffs in the instant action—who are BMW of North America, LLC and

---

[2] Unless otherwise noted, the facts recited in this section are undisputed by the parties. Notably, this action is a judicial review of an agency decision under the Administrative Procedure Act and turns on the administrative record, which means that "there can be no genuine issue of material fact regarding the contents of the record." *R.R. Donnelley & Sons Co. v. Dickinson*, 123 F. Supp. 2d 456, 458 (N.D. Ill. 2000). Rather, the dispute in the instant action can be decided and resolved as a question of law. *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (concluding in the context of a motion to dismiss involving a challenge of an agency action that "[t]he entire case on review is a question of law, and only a question of law"). Defendants state that they do "not dispute that the administrative record speaks for itself," and instead note that they "dispute BMW's arguments contained in the statement of undisputed material facts." Dkt. 50 at 20. These are legal disputes and not factual disputes and accordingly, are treated as such herein.

BMW Manufacturing Co., LLC[3]—had filed three parallel petitions seeking *inter partes* review ("IPR") challenging the validity of all claims in the '416 Patent.  A.R. 726–800 (No. IPR 2019-00905); A.R. 1100–79 (No. IPR 2019-00904); A.R. 1181–249 (No. IPR 2019-00928).  IPR "allows a third party to ask the U.S. Patent and Trademark Office to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art." *Cuozzo Speed Techs. v. Com. for Intell. Prop.*, 579 U.S. 261, 265 (2016).  The Patent Trial and Appeal Board ("PTAB") denied institution of IPR proceedings upon review of BMW's petitions. A.R. 236–37 (denying institution of No. IPR 2019-00904); A.R. 390–91 (denying institution of No. IPR 2019-00928); A.R. 422–233 (denying institution of No. IPR 2019-00905).  However, in July 2020, the PTAB reconsidered the '416 Patent in response to a petition seeking IPR filed by nonparty Unified Patents, Inc.  A.R. 253–322 (petition); A.R. 324–26 (finding all challenged claims of '416 Patent as unpatentable).

Meanwhile, the PTO reconsidered the '475 Patent in response to a petition seeking IPR filed by BMW.  A.R. 825–65.  In October 2020, the PTO ultimately found that certain challenged claims were unpatentable.  *Id.*

In May 2021, the PTO ordered reexamination of the '416 Patent after BMW filed a request for *ex parte* reexamination ("EPR").  A.R. 2528.  EPR allows an individual, including the Director on her own initiative, to request reexamination "of any claim of a patent."  35 U.S.C. §§ 302, 303(a).  The '416 Patent's claims merited reexamination because BMW's grounds raised substantial new questions of patentability ("SNQP").  A.R. 2528; 35 U.S.C. §§ 303–304.  In September 2021, the PTO issued a nonfinal office action rejecting the challenged patent claims of

---

[3] Though there are two plaintiffs in the instant action, they collectively represent the same entity "BMW" described in the proceedings before the PTO, as well as other courts, related to the '416 and '475 Patents. *See* Dkt. 43 at 1.

the '416 Patent as unpatentable. A.R. 2528.

In November 2021, Carrum—as the patent owner—filed a petition to vacate the EPR of

the '416 Patent pursuant to 35 U.S.C. § 325(d). AR 2529. On September 13, 2023, the PTO

Director—acting through the Office of Patent Legal Administration ("OPLA")—vacated the EPR.

A.R. 2533–35. In so doing, the Director expressly declined to apply the *Becton* factors established

by the PTO for analyzing § 325(d) in the context of IPR proceedings.[4] AR 2533–34.

In its Motion for Summary Judgment before this Court, BMW claims that the decision to

vacate the EPR was arbitrary and capricious and thus violated § 706(2)(A) of the Administrative

Procedure Act ("APA"). Dkt. 43 at 16.

## II.    Legal Standard

Summary judgment is appropriate where a movant shows that "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "Normally, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its

own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

---

[4] The *Becton* factors originate from *Becton, Dickinson & Co. v. B. Braun Melsungen AG*, No. IPR 2017-01586, 2017 WL 6405100 (P.T.A.B. Dec. 15, 2017). The PTAB summarized the *Becton* factors as follows:

> *Becton, Dickinson* identifies the following non-exclusive factors: (a) the similarities and material differences between the asserted art and the prior art involved during examination; (b) the cumulative nature of the asserted art and the prior art evaluated during examination; (c) the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection; (d) the extent of the overlap between the arguments made during examination and the manner in which petitioner relies on the prior art; (e) whether petitioner has pointed out sufficiently how the examiner erred in its evaluation of the asserted prior art; and (f) the extent to which additional evidence and facts presented in the petition warrant reconsideration of the prior art or arguments.

*Advanced Bionics LLC v. MED-EL Elektromedizinishe Geräte GmbH*, No. IPR 2019-01469, 2020 WL 740292, at *4 n.10 (P.T.A.B. Feb. 13, 2020) (citations omitted).

specific facts showing that there is a genuine issue for trial." *Thompson v. United States*, 119 F. Supp. 3d 462, 467 (E.D. Va. 2015). "However, '[i]n a case involving review of a final agency action under the [APA] . . . the standard set forth in Rule 56(c) does not apply because of the limited role of a court reviewing that administrative record.'" *Id.* (alterations in original) (citation omitted).

Thus, "[u]nder the review provision of the APA applicable here, a court may set aside the PTO's actions only if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Gilead Scis., Inc. v. Lee*, 778 F.3d 1341, 1346 (Fed. Cir. 2015) (quoting 5 U.S.C. § 706(2)(A)). This means that a court must look to whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). "The 'function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Thompson*, 119 F. Supp. 3d at 467 (citation omitted).

This is a deferential standard, however. "Under an arbitrary and capricious standard, the scope of review is narrow and a court may not 'substitute its judgment for that of the agency.'" *Burandt v. Dudas*, 528 F.3d 1329, 1332 (Fed. Cir. 2008) (citation omitted). Because APA claims against the PTO concern substantive questions of patent law, controlling precedent for the purposes of this Court's analysis is derived from the Federal Circuit as opposed to regional circuit law. *Alarm.com Inc. v. Hirshfeld*, 26 F.4th 1348, 1354 (Fed. Cir. 2022); *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1108 (Fed. Cir. 2020).

### III.    Analysis

#### A. Discrepancies in Director's Analysis of the Record

Though a district court sitting in review of an agency decision must accord deference when deciding whether the agency's decision was arbitrary and capricious, a court may find that an agency "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. Such a finding is a basis to set aside an agency action. *Id.*

In their Motion for Summary Judgment, BMW argues that the Director failed to consider relevant facts and other key issues when she decided to vacate the EPR. Dkt. 43 at 21. BMW points to several discrepancies in the record that stand out to the Court. First, when the PTO decided to grant BMW's EPR request, the PTO found that all of the grounds raised in BMW's EPR request raised a substantially new question of patentability. A.R. 2044. BMW points out that in vacating the EPR, the Director "did not explain how these prior findings were wrong." Dkt. 43 at 23. Defendants argue, in response, that "the decision to grant reexamination was based on an error, one the Director did not specifically highlight in the decision but discussed nonetheless." Dkt. 55 at 3. Defendants argue that it was proper for the Director to "correct[] an error made by the examiner that would have produced inconsistent results." *Id.*

Second, in her decision to vacate the EPR, the Director admitted that four references were "newly presented." A.R. 2532. As to one newly-presented reference—Prestl—the Director noted, when analyzing Ground 16 of the request, that "the teachings of the Prestl reference relied on in the request are not the same or substantially the same as those set forth in the previously-presented Brochure and Schmitt references." A.R. 2533. BMW argues that these admissions indicate that the Director should have made her decision on a ground-by-ground basis, which she may do in the

context of EPR proceedings pursuant to 35 U.S.C. § 304. Dkt. 43 at 25. The Supreme Court even recognized as much. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 365–66 (2018) (stating that § 304 "allows the Director to institute proceedings on a claim-by-claim and ground-by-ground basis"). Defendants argue that, even so, the Director properly determined that "the new prior art (Prestl, Winner NPL, and Widmann) was similar to prior art previously presented by BMW in its IPRs (BMW Brochure and Khodabhai)." Dkt. 50 at 23. Therefore, Defendants claim that any supposed new prior art did not include information other than that which was already considered by the PTAB. *Id.*

BMW's argument that the Director was required to proceed ground-by-ground is based on a discussion that the Supreme Court presented in *SAS Institute*. *See* Dkt. 52 at 14 n.6. In interpreting the word "shall" in 35 U.S.C. § 318(a), which prescribes certain requirements for IPR review, the Court stated that "[t]he word 'shall' generally imposes a nondiscretionary duty." *SAS Inst.*, 584 U.S. at 362. BMW reasons that because 35 U.S.C. § 304 states that the Director "will" include an order for reexamination when "the Director finds that a substantial new question of patentability affecting any claim of a patent is raised," the Director is bound to proceed on a ground-by-ground basis under a similar nondiscretionary duty. Dkt. 52 at 14 n.6. Defendants respond that in *In re Vivint*, the Federal Circuit found that even when an EPR request presents a substantial new question of patentability, the PTO "may still reject the request under § 325(d)." Dkt. 50 at 25 (citing *In re Vivint, Inc.*, 14 F.4th 1342, 1350 (Fed. Cir. 2021)).

In pertinent part, the plain text of Section 304 provides "[i]f, in a determination made under the provisions of subsection 303(a), the Director finds that a substantial new question of patentability affecting *any* claim of a patent is raised, the determination *will* include an order for reexamination of the patent for resolution of the question." 35 U.S.C. § 304 (emphasis added).

"Will," like "shall," imposes a nondiscretionary duty. Thus, 35 U.S.C. § 304 requires the Director to order reexamination of a patent when the Director determines there is a substantial new question of patentability affecting *any* claim of a patent. Despite Defendants' arguments to the contrary, the Court finds that 35 U.S.C. § 325 does not obviate this mandate.

Section 325(d) provides "the Director *may* take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." 35 U.S.C. § 325(d) (emphasis added). Thus, while the Director ultimately has discretion to reject a request, the analysis should still be as to each ground.

In her decision vacating the EPR, the Director failed to sufficiently reconcile her decision with the PTO's earlier determination that it had found that all of the grounds raised in BMW's EPR request raised a substantial new question of patentability. *See* A.R. 2044 (order granting EPR). Under the text of the statute, if the PTO had previously found that all of the grounds raised in BMW's EPR request raised a substantial new question of patentability, it follows that the Director was required to explain—as to each ground—why the PTO had previously been in error. This is because as to each ground, the PTO had previously determined that reexamination was appropriate. *See id.*

Moreover, the Director found that Ground 16 contained teachings that "are not the same or substantially the same" as those previously presented to the PTO. AR 2533. Despite this, the Director then decided that the "weight of the grounds" in the request as to Grounds 1–15 presented the same or substantially the same prior art that was previously presented in BMW's IPR petitions. *Id.* However, in light of Congress's clear mandate that the Director order reexamination when a substantial new question of patentability affecting any claim of a patent is raised, the Court finds that the Director was required to analyze her decision on a ground-by-ground basis. *See* 35 U.S.C.

8

§ 304. As the decision is written, the Court cannot discern how—considering the record presented to her—the Director could decide that an EPR was inappropriate even though the PTO had earlier acknowledged that it been presented with substantial new questions of patentability. This renders the decision arbitrary and capricious, as it appears that the Director "offered an explanation for [her] decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.

### B. Director's Discretion Regarding *Becton* Factors

BMW argues that the Director must apply the so-called *Becton* factors when analyzing whether the same or substantially the same art or arguments were previously presented to the Patent Office. Dkt. 43 at 16. As discussed *supra* note 4, the *Becton* factors originate from *Becton, Dickinson & Co. v. B. Braun Melsungen AG*, No. IPR 2017-01586, 2017 WL 6405100 (P.T.A.B. Dec. 15, 2017). BMW argues that the PTO has announced that the *Becton* factors must be applied under 35 U.S.C. § 325(d). *Id.* at 2. BMW also points to the Federal Circuit's decision in *In re Vivint, Inc.*, characterizing the case as holding that "there were 'no difference[s] between the IPR [inter partes review] and ex parte reexamination processes that would justify' applying § 325(d) differently between IPR proceedings and *ex parte* reexamination proceedings." Dkt. 43 at 2 (quoting *In re Vivint, Inc.*, 14 F. 4th at 1354). BMW therefore argues that when the Director explicitly declined to apply the *Becton* factors in the decision below, she committed legal error because the *Becton* factors must be applied when appropriate within IPR proceedings. *Id.*

Defendants, on the other hand, argue that, under the plain language of 35 U.S.C. § 325(d), the Director is not required to apply the *Becton* factors in determining whether to terminate EPR proceedings. Dkt. 50 at 26. Rather, the statute states that the Director "may" take into account whether the same or substantially the same prior art or arguments were previously presented to the

9

PTO. *Id.* They argue that this language confers discretion. *Id.* As such, Defendants argue that the Director was permitted to treat EPR proceedings differently than IPR proceedings. *Id.* at 27. Further, Defendants argue that in *In re Vivint, Inc*, the "Federal Circuit recognized that the differences between *inter partes* review and *ex parte* reexamination might portend a different result under certain circumstances." *Id.* at 31.

Identifying its holding as "narrow[,]" the Federal Circuit concluded in *In re Vivint* that 35 U.S.C. § 325(d) "applies to both IPR petitions and requests for *ex parte* reexamination." 14 F.4th at 1354. The Federal Circuit, however, made clear that its ruling was "limited." *Id.* The Court went on to recognize that there are inherent differences between the EPR and IPR regimes, as "there can be a *public* interest in reexamination that goes beyond the interests, or propriety of behavior, of a particular challenger." *Id.* The Federal Circuit cited the Supreme Court's holding in *SAS Institute*, in which the Supreme Court recognized that the IPR and EPR processes were made distinctive by Congress through statute, which "is a choice neither [the Court] nor the agency may disregard." 584 U.S. at 364.

In a later case, the Federal Circuit characterized *In re Vivint* as holding "that the PTO had arbitrarily and capriciously applied § 325(d) when it granted the requester's nearly identical petition for *ex parte* reexamination based on the same arguments raised in a previous IPR petition that was denied based on the requester's abusive filing practices." *In re Knauf Insulation, Inc.*, 2022 WL 17098755, at *2 (Fed. Cir. Nov. 22, 2022). On this view, *In re Vivint* is not as far-reaching as BMW suggests in their briefing, but was instead a case-specific application of § 325(d). Moreover, in the instant case, the Director vacated the PTO's earlier decision to order EPR because, in part, the PTO had already denied three of BMW's IPR petitions. *See* A.R. 2533. In other words, *In re Vivint* appears to scrutinize a situation in which the PTO arrives at different outcomes across

10

EPR and IPR proceedings when presented with arguments it has already seen. *In re Knauf Insulation, Inc.*, 2022 WL 17098755, at *2 (summarizing the Court's holding in *In re Vivint*). Adopting BMW's interpretation of *In re Vivint* would require that the PTO reexamine certain claims that it had already declined to reconsider previously in the context of IPR petitions. Such a finding would contravene the holding of *In re Vivint*.

Second, 35 U.S.C. § 325(d) itself states that "[i]n determining whether to institute or order a proceeding," "the Director *may* take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." (emphasis added). The PTAB has held that the *Becton* factors are instructive in determining whether a petition or request may be rejected on these grounds in the context of an IPR proceeding. *Advanced Bionics LLC v. MED-EL Elektromedizinishe Geräte GmbH*, No. IPR 2019-01469, 2020 WL 740292, at *4 (P.T.A.B. Feb. 13, 2020). BMW argues that because of the parity recognized by the Federal Circuit in *In re Vivint* between IPR and EPR proceedings for the purposes of applying 35 U.S.C. § 325(d), it also follows that the *Becton* factors must be applied in the EPR context as well. Dkt. 43 at 18. Thus, BMW concludes, when the Director declined to do so in the instant matter, she purported to exercise discretion she did not have and therefore committed reversible legal error. *Id.* at 19.

Critically, the text of 35 U.S.C. § 325(d) states that the Director *may* take into account the same or substantially the same prior art or arguments standard when deciding whether to institute a proceeding. While applying § 325(d) in a case decided after *In re Vivint*, the Federal Circuit recognized that the PTO may make "a case-specific exercise of discretion that the prior art (and arguments) were not the same or substantially the same as those previously presented in other proceedings, which does not create the same kind of clear, arbitrary departure from prior PTO

determinations that was at issue in *Vivint*." *In re Knauf Insulation, Inc.*, 2022 WL 17098755, at *2. Just last year, the Federal Circuit stated that the wording of § 325(d) means that "the decision to decline [*ex parte*] reexamination under § 325(d) is generally left to the discretion of the Patent Office." *In re IOENGINE, LLC*, 2024 WL 677084, at *1 (Fed. Cir. Feb. 20, 2024).

In light of this case law, the Director was correct to recognize in her decision in the instant matter that *In re Vivint* "clarified that the [OPLA] has authority to reconsider a decision ordering *ex parte* reexamination based on 35 U.S.C. § 325(d)." A.R. 2529. The Director was also correct to conclude that she retained discretion over the manner in which she applied § 325(d) to EPR proceedings. *In re IOENGINE, LLC*, 2024 WL 677084, at *1 (recognizing the discretion afforded to the PTO under § 325(d) as to EPR proceedings).

Thus, the Court finds that BMW characterizes the holding of the Federal Circuit in *In re Vivint* too broadly. Rather, the Federal Circuit itself was clear that its holding was narrow, limiting the parity it established between IPR and EPR proceedings to cases where the PTO has clearly broken from prior decisions in matters where it had been presented with nearly identical arguments. In the years since it decided *In re Vivint*, the Federal Circuit has further clarified that § 325(d) itself allows for the Director to make case-specific, discretionary determinations about whether to apply the statute's same or substantially same art or arguments standard. *See In re Knauf Insulation, Inc.*, 2022 WL 17098755, at *2; *In re IOENGINE, LLC*, 2024 WL 677084, at *1. The Court is unaware of case law that establishes that the Director must apply the *Becton* factors, in turn, to an EPR proceeding under a § 325(d) analysis.

The Court will therefore deny BMW's Motion to the extent it asks the Court to hold that the Director must apply the *Becton* factors to an EPR proceeding. The Court defers to the Director's discretion in declining to explicitly apply the *Becton* factors. *Pfizer Inc. v. Sanofi*

12

*Pasteur Inc.*, 94 F.4th 1341, 1350 (Fed. Cir. 2024) (requiring a "sufficiently detailed explanation . . . both to enable meaningful judicial review and to prevent judicial intrusion on agency authority" (quoting *Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*, 856 F.3d 1019, 1024 (Fed. Cir. 2017))).

### C. Harmless Error

Finally, the Federal Circuit has recognized that errors challenged under 5 U.S.C. § 706 in the APA—as in the instant action—"are generally subject to a traditional harmless-error analysis, with challengers of the agency action having the burden of showing prejudice." *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1362 (Fed. Cir. 2018). Even so, as the Supreme Court has recognized, "[i]t is not the role of the courts to speculate on reasons that might have supported an agency's decision." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016). As a result, "conclusory statements do not suffice to explain [an agency's] decision." *Id.* The Federal Circuit has similarly concluded that "as to issues made material by the governing law, [the decisionmaker must] set forth a sufficiently detailed explanation of its determinations both to enable meaningful judicial review and to prevent judicial intrusion on agency authority." *Pfizer*, 94 F.4th at 1350 (citation omitted).

In her September 13, 2023 decision to vacate the EPR, the Director—acting through the OPLA—analyzed the request and again stated that they "present the same or substantially the same prior art that was previously presented to the [OPLA] in BMW's petitions in [three other] IPRs" but did not proceed ground by ground. A.R. 2533. As explained above, the Director also identified that Ground 16 presented a substantial new question of patentability. *Id.* The Director's failure to explicitly address how Ground 16 factored into her analysis—instead choosing to conclude that the request overall presents the same or substantially the same prior art as previously presented—

is insufficient to avoid a finding of legal error even in light of the harmless-error standard. *See Encino Motorcars, LLC*, 579 U.S at 224 (declining deference after finding that "conclusory statements d[id] not suffice to explain [an agency's] decision"). Thus, the Director's decision not to explicitly address Ground 16 was not harmless.

Additionally, the Court cannot conclude at this stage that even if the Director had analyzed the request for EPR on a ground-by-ground basis, her decision would have been the same. For these reasons, the Director failed to "set forth a sufficiently detailed explanation of its determinations" such that this Court may properly review the decision's bases under a deferential standard. *Pfizer Inc.*, 94 F.4th at 1350.

## IV.    Conclusion

For the reasons stated above, the Court shall grant in part BMW's Motion for Summary Judgment (Dkt. 42) and deny Defendants' Motion for Summary Judgment (Dkt. 47). Accordingly, it is hereby

**ORDERED** that BMW's Motion for Summary Judgment (Dkt. 42) **is GRANTED in part** and **DENIED in part**. BMW's Motion is **GRANTED** to the extent it asks the Court to find that Defendants acted in an arbitrary and capricious manner in violation of the Administrative Procedure Act, 5 U.S.C. § 706. BMW's Motion is **DENIED** to the extent it asks the Court to find that the Director must apply the *Becton* factors; it is further

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 47) is **DENIED**; it is further

**ORDERED** that this matter is **REMANDED** to the Director due to the Director's failure to adequately explain her analysis as to the factual record before her on a ground-by-ground basis.

Entered this 25ᵗʰ day of March, 2025
Alexandria, Virginia

_____
Patricia Tolliver Giles
United States District Judge

15